## United States District Court Northern District of Illinois

Elaine Whigham-Williams

### *Plaintiff*

1:16-cv-04263
--cv— Judge John J. Tharp, Jr
Magistrate Judge Susan E. Cox

COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### JURY TRIAL DEMANDED

vs.

Marsh McClennan

### *Respondent/ Defendants*

RECEIVED

APR 1 2 2016

THOMAS G BRUTON
CLERK, U S DISTRICT COURT

## COMPLAINT

1. Comes Now, Plaintiff, Elaine Whigham Williams, and files her Complaint against the above-named Defendants on the following Grounds:

## INTRODUCTION

2. This is an action for gender discrimination pursuant to 42 U.S.C. § 2000e et seq. (Title VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1991.

## JURISDICATION

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4. This Court has personal jurisdiction over Defendant Marsh McClennan Companies Defendant is a for-profit Illinois Corporation all times relevant, Defendant Marsh operated its global risk management services in Illinois and throughout the United States of America.

5. This Court has personal jurisdiction over Defendant Marsh McClennan Defendant who operates their Human Resources Office out of the state of Illinois.

## VENUE

6. Defendants operate their business within the Northern District of Illinois. All actions by Defendants alleged herein Occurred within the United States of America. Venue in this District is proper for the Defendant pursuant to 28 U.S.C. § 1391(b) & (c).

## THE PARTIES

7. Defendant Marsh is a for-profit Insurance Risk Management firm doing business globally and is subject to the jurisdiction of this Court as the Human Resources Department is located in Illinois. Defendant Marsh may be served with summons and process by service upon its registered agent, Marc Sotos or Deborah Jandt, at 5400 W. Madison, Chicago, Illinois 60661

On or about January 14, 2013, the Plaintiff began her

employment as a Sr. Level Account Representative

at the Marsh McClennan in Dallas,Texas after receive all clear

from Human resources in Chicago, Illinois.

## FACTS

8. Plaintiff Elaine Whigham Williams is seeking damages against Respondent Marsh McClennan Companies for workplace bullying, discrimination and in creating a intidating hostile and abusive work environment during her tenure at the Dallas, Texas office. The office address was 1717 Main Street Comerica Building Dallas,Texas and Plaintiff reported directly to Cynthia Hammond in the National Brokerage Division. The acts of workplace bullying committed against the Plaintiff were deliberate acts of discrimination due to the Plaintiff's gender and color. Plaintiff also believes Respondents acts was retailiation steaming from a unemployment claim from 2012 after being workplaced bullied at Merrimac Marine Insurance LLC where Plaintiff was workplaced bullied into "incarnation". Plaintiff moved to Dallas, Texas with her minor son for a fresh start new life. Plaintiff was hired by Marsh McClennan as a Senior Level Account Representive at a starting salary of $65,000 plus a benefit compensation package. All acts are in violation of ***Title VII Civil  Rights Act of 1964.*** Plaintiff was employed with Marsh from 1/14/2013 until November of 2013. Plaintiff worked in the Dallas, Texas office from 1/14/2013 until 3/30/2013 where she was

Subjected to a deliberate, systematic and calculated campaign to belitte and degrade professionally and personally. The motives for the workplace bullying was initially hard to discern however,the workplace environment deteriorated over time. The Plaintiff is a black american female with considerable attainment. The Plaintiff has worked in the commercial insurance sector for over a decade and has held a variety of positions. When Plaintiff accepted the offer at Marsh McClennan she was

excited about the advancement potential the position offered. It was a great opportunity for the Plaintiff and her family a minor(son) Cayman J. Williams.

9. Plaintiff worked on the National Brokerage team and her supervisor was Linda Hammond. Plaintiff was assigned accounts handled by Linda Hammond whom also was assigned to be plaintiff's trainer. One month into training Linda went on a leave of absence, Plaintiff was left for six weeks to handle all high profile accounts on her own as Linda Hammond went on a paid leave of absence, and this is when the systematic bullying and the belittling began both professionally and personally. Plaintiff was forced to handle many of Linda Hammond's responsibilities during Linda's absence and could be described as "team player". Plaintiff was assigned a book of business with the majority of the accounts renewing in July or June. Plaintiff was assigned the task of completing loss ratio and account performance spreadsheets in which she was not properly trained to complete. Plaintiff cubicle mate Jill who sat directly behind Plaintiff began spraying a foul smelling spray with a scent of fecal gas. The spray would be sprayed when Plaintiff left her desk. When Plaintiff returned to desk her cubicle mates would begin to laugh. The fecal gas spray incidents made Plaintiff anxious as she was new on the job and did not want team mates to think she had body order and poor personal hygiene. Plaintiff was new on the job, the best job of her career and wanted to make a good impression with teammates and executive staff. Plaintiff was subjected to constant noise pollution which is said to cause elevated blood pressure, fatigue, headache and digestive disorders.

" Excessive noise in the workplace presents a risk of hearing damage and other health problems. " (https://www.betterhealth.vic.gov.au/health/healthyliving/workplace-safety-noise-pollution)2015

Plaintiff desk was placed near a high traffic noisy area of the office. Plaintiff would hear male Account Executive would made comments regarding her tenure as she sat at her desk working. Plaintiff handled large high profile accounts. Plaintiff was assigned a team of Account Executive (Sales VP's) whom all

progressively alienated her and stopped communicating with her regarding the accounts Plaintiff was assigned. The relationship with Plaintiff and the Account Executive team deteriorated after Linda Hammond went on medical leave. It was important for Plaintiff job performance required that all lines of communication remain open between Plaintiff and her assigned VP's. For example the Plaintiff handled the American Heart Association and large construction accounts whose home offices were located in Oklahoma City. As weeks progressed towards Linda Hammond returning to work Plaintiff was forced to initiate contact with the executive staff that refused to communicate with Plaintiff regarding the status of their meetings with clients. Plaintiff worked with executives John Eagan and Bill Hines. Plaintiff also believes that she may have been a target for termination due to "Last in First Out" as Marsh was piloting a program to outsource jobs overseas. During Plaintiff tenure at Marsh McClennan a pilot program was being tested to move service operations to India. Work task through out the Marsh McClennan corporation were being placed on templates with processing instructions. The service operations was being outsourced however, the Dallas Office was not suppose to be affected. The Dallas Office of Marsh is now closed. Plaintiff believes the Dallas Office of Marsh McLennan closed in 2014.

*Zimmerman et all vs. Direct Federal Credit Union 262 F. 2d (1st Cir. 2001)*

10.  Plaintiff began to notice incidents of stalking and attempts to commit physical assaults against plaintiff and her minor child several weeks after she became employed with Marsh McClennan.

*Flash mobbing" is an event occurring when a targeted individual is spotted in society. Their photo and location is immediately and simultaneously sent out by cell phone text messages and Internet email to all gang stalkers within a certain radius. All gang stalkers then suddenly descend upon the target as a mob in vehicle where plaintiff was almost ran down on her way to work while commuting to the Marsh McClennan Office at 1717 Main Street Comerica Building Dallas, Texas*

*3/28/2016 Plaintiff was hit by a Rita Jones Johnston in Sandy Springs, GA*

Ritual Gangstalking" is reportedly performed by cults and secret organizations such as Satanists, secret orders of free masons, some voodoo /obeah practitioners and Scientologists as a means of control or for punishment. "Ritual abuse" is incorporated into "ritual gangstalking" patterns in this case.

Cyberbullying: Assailants used images of a Silver Cruiser featured on Plaintiff Facebook page a means of community mobbing as a reminder of Plaintiff son, in order to inflict Plaintiff with emotional distress and fatigue.

N.B. Obeah is considered one of the darkest forms of black magic known. Blood sacrifice is always used and the intent is to harm, even to death, another person.

3/21/2013 Plaintiff had taken off 2 days to rest from her job at Marsh to attend a singing contest and her minor was vacationing in Houston Texas a male of Mexican descent got on a Houston City bus and did a blood sacrifice where the assailant let blood drip from his finger.

On 3/31/2013 Good Friday Plaintiff son Cayman J. Williams started experiencing severe chest pains. Plaintiff who took her son to Medical City Hospital in Dallas, Texas. Plaintiff a Christian carrying a New King James Version of the Bible told a triage nurse her son was having chest pains and it was nothing but the devil. Plaintiff was placed in the hospital for statement and instead of Plaintiff son being medical treated Plaintiff was medically treated and kept out of work for 3 weeks. Plaintiff boss Linda Hammond was scheduled to return to work on 4/1/2013, when Plaintiff tried to call Linda Hammond, Linda refused to answer Plaintiff calls. Plaintiff was eventually sent an email from Marsh McClennan that indicated that Plaintiff job was given to another applicant. Plaintiff was off of work from 3/31/2013 – 4/31/2013. Plaintiff was sent a letter on 11/15/2013 from Marc Sato from Marsh in the HR Business Partners entitled **"Job Abandonment"** however the body of the letter indicates that Marsh sent Plaintiff a letter on 5/3/2013 indicating they **"could no longer keep Plaintiff position open"**. The letter indicated that Plaintiff medical leave pay of $2,544.43 was paid in a administrative error" and Plaintiff was responsible for paying that money back. Another

erroneous error occurred when Plaintiff was sent the offer letter for a Plaintiff in distress regarding the loss of her son and the best job of her insurance career answered email with an attempt to pay funds back to Marsh even though Marsh was at fault for all events committed against the Plaintiff. Plaintiff who was a football mom and an exceptional parent son was removed from her care and given to his biological father Jeffery Lee Walker after case being held for several months in a court system because Plaintiff was held in a Dallas hospital to keep her from completing her probationary period of 90 days with Marsh.  Jeffery Lee Walker is an ex-felon and a dead beat Dad. Plaintiff a role model parent was ordered to have supervised visit (a form of monitoring). Plaintiff has not seen or heard from her son, the State of Texas, The Court appointed attorney Ramiro Garcia or her son's father Jeffrey Walker and Plaintiff has reason to believe her son may be dead and a victim of the workplace bullying attack by Marsh McClennan of Dallas. All events occurred to keep plaintiff from retaining the job with Marsh.

*Williams vs State of Texas Department of Family Protective Service, 1300354W*

11.  Plaintiff was then subjected to ostracism and rejection by family, friends and industry.  Plaintiff also indicated for months after Marsh contacted her regarding her Job being filled by another applicant, she received calls every day from Marsh's Employee Services verifying her "Contact Information", a form of monitoring and bullying. On 2/8/2016 Plaintiff who is being stalked and harassed by Marc Soto of Marsh received a Linkedin request to connect with him. Plaintiff has been affected greatly by the workplace bullying incidents by Marsh McClennan and Marc Soto's who continues to harass and community mob plaintiff. Plaintiff has been kept from retaining and obtaining employment since her tenure with Marsh McClennan which has cause Plaintiff to be subjected to homelessness and ostracized. Plaintiff has been community mobbed and police states if it had not been for Plaintiff faith in God she would be dead and killed by those involved in bullying her and trying to take her life.

12. Throughout her employment, the Plaintiff performed her duties in a satisfactory or above manner, despite that fact that she was abandoned by trainer and not properly trained.

13. The Plaintiff was terminated because of her female gender, race and because she was an easy target for work place bullying, community mobbing and harassment.

14. Defendants have engaged in illegal discrimination against the Plaintiff because of her gender and because of her race.

## COUNT ONE: TITLE VII GENDER,RACE, RETAILATION AND HARASSMENT

15. Plaintiff incorporates herein paragraphs 1 through 14 of her Complaint.

16. Defendants have engaged in intentional gender discrimination, race and sexual harassment In the terms and conditions of the Plaintiff's employment, Including, but not limited to, the Plaintiff's termination

17. Defendants' conduct violates Title VII.

18. Defendants' discriminatory conduct, in violation of Title VII, has caused the Plaintiff to suffer a loss of pay, benefits, and prestige.

19. Defendants' actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages pursuant to 42 U.S.C. § 1981a.

20. Defendants have engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages pursuant to 42 U.S.C. § 1981a.

PRAYER FOR RELIEF

21.

Wherefore, Plaintiff prays for a judgment as follows:

1. That the Court order Defendants to reinstate Plaintiff's employment;

2. That the Court grant full front pay to the Plaintiff;

3. That the Court grant full back pay to the Plaintiff along with $25,000,000.00;

4. That the Court grant Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by Defendants' conduct;

5. That the Court grant Plaintiff punitive damages for Defendants' malicious and recklessly indifferent conduct;

6. That the Court grant Plaintiff all employment benefits she would have enjoyed had she not been discriminated and retaliated against;

7. That the Court grant Plaintiff expenses of litigation, including reasonable attorneys' fees, pursuant to the Title VII, and/or 42 U.S.C. § 1988;

8. That the Court grant Plaintiff a jury trial;

9. That the Court grant Plaintiff all other relief the Court

deems just and proper; and,

10. That the Court grant temporary, preliminary, and permanent injunctive relief prohibiting Defendants from engaging in further discriminatory conduct.

Respectfully submitted this 8th day of April 2016.

Elaine Whigham Willams

2700 Buford Hwy Apt 25

Atlanta, Georgia 30324

Telephone   470-819-7223

elainewhighamwilliams2016@yahoo.com

4/8/2016

Elaine Whigham Williams   4/8/2016

Please serve

**Elaine Whigham Williams vs.  Marsh**

Additional Documents attached to complaint/case

1.  Unwanted  Social Media contact request by Marc Sato of Marsh

2.  Letter from Marc Sato wrongly termination masked as Job Abandonment/position filled after Plaintiff was on Medical leave for 30 days.

3.  Email from Marsh with Offer Letter and erroneous sent to Plaintiff with another employees offer attached.

*Unwanted Contact Request from Marc Sato via Social Media 2016*

**Subject:**    Marc Sato, SPHR, SHRM-SCP, CCP's invitation is waiting for your response

**From:**    Marc Sato, SPHR, SHRM-SCP, CCP (messages-noreply@linkedin.com)

**To:**    williamselaine85@yahoo.com;

**Date:**    Monday, February 8, 2016 8:34 PM

**Linked in.**

**Marc Sato, SPHR, SHRM-SCP, CCP** invited you to connect 6 days ago.
How would you like to respond?

[ Accept invite ]    [ Ignore ]



## Marc Sato, SPHR, SHRM-SCP, CCP

Human Resources Business Partner at Marsh

View profile ▸

You are receiving invitation reminder emails. Unsubscribe
This email was intended for Elaine Whigham Williams (2016 Democratic U.S Presidential Candidate at 2016 U,S
Presidential Elections, News Reporter, Insurance Agent). Learn why we included this.
If you need assistance or have questions, please contact LinkedIn Customer Service.

© 2016 LinkedIn Corporation, 2029 Stierlin Court, Mountain View CA 94043. LinkedIn and the LinkedIn logo are registered
trademarks of LinkedIn.



 MARSH

Marsh Chicago Office
540 W. Madison, Suite 1200
Chicago, IL 60661

November 15, 2013

By Overnight Delivery and Email
Elaine Whigham Williams

8201 Brookriver Drive
Dallas, TX 75247

Subject: Job Abandonment

Dear Elaine:

As you know, you went on a leave of absence on April 1, 2013. On May 3, 2013, you were sent a letter explaining that the Company could not keep your position open, and you were placed on unpaid leave effective May 13, 2013. On May 24, 2013, the Hartford denied your application for leave. I understand that the Hartford sent you a letter on that date to notify you of the denial, but that the letter was returned undelivered. On May 31, 2013, your accrued but unused vacation was paid out.

As we have not heard from you since May, your employment has been terminated effective May 16, 2013, and will be treated as a voluntary resignation from the Company. Due to an administrative error, however, your benefits remained active until the date of this letter. That error has been corrected, and information regarding the continuation of your health care benefits will be sent to this address. (Please note that this is the last address we have for you, but in light of the return of the Hartford's letter and the fact that the emergency contact that we have on file for you could not provide us with more current contact information, we are also sending this electronically.)

Please note that, because you were paid your unused accrued vacation, the payments that you received for the period from April 16 through May 15, 2013 (i.e., net payments of $2,544.43) constitute overpayments that you are obligated to repay to the Company. Please remit a check in the amount of $2,544.43, made out to Marsh & McLennan Companies, to my attention by no later than December 31, 2013.

If you have any questions, please contact me directly at 312-627-6381.

Very truly yours,

Marc Sato
VP, HR Business Partner



**Subject:** Re: Job Abandonment

**From:** Elaine Williams (williamselaine85@yahoo.com)

**To:** Marc.Sato@marsh.com;

**Date:** Friday, November 15, 2013 7:48 PM

*Letter/email to marc Sato prior to Plaintiff realizing she was a victim of workplace Bullying*

Marc,

Please give me a call at your earliest convenience to discuss. I was actually ran out of your Dallas Office my John Eagan and Bill Hines who are vampires. I came to work for Marsh on Good Faith thinking that I had landed the job of a lifetime. After being chased around the city of Dallas for several months to keep my from completing a 3 months probationary period, I went to the hospital Medical City to try and get medical attention. The office (Dallas) some how turned the entire city out on me. I then requested to come back to work on May 15 2013 and was told that my job could no longer be held. My son is now being wrongfully held in Dallas Texas because I did not have family members in the area when I was placed in the hospital. Now I am being miss treated by a industry that I adore because of the color of my skin.

You can set up a payment plan at $50.00 per month. You see our industry is built upon integrity however, I feel that some that are in control are not as "Ethical" as they claim to be.  You see integrity goes beyond white starched shirts and kahki paints it has a lot to do about our hearts and how we treat people. One of the proudest moments that I experienced was landing the job with Marsh and one of the saddest was receiving this letter after being mistreated by your sales executives in your Dallas office. You see I still consider myself a "Marsh On"... We are extremely transparant. Thank you we can discuss over the phone. Be blessed and I wish Marsh a successful, happy and prosperous New Year.


Elaine Williams


**From:** "Sato, Marc" <Marc.Sato@marsh.com>
**To:** "williamselaine85@yahoo.com" <williamselaine85@yahoo.com>
**Sent:** Friday, November 15, 2013 11:19 AM
**Subject:** Job Abandonment


Please see attached document:

---

**Marc Sato, SPHR, CCP – HR Business Partner**
North Central Partnership - Marsh, Inc.
540 W. Madison, Suite 1200, Chicago, IL 60661, USA

③ Plaintiff receive wrong offer letter from marsh another erroneous error

Zavala, Claudia <Claudia.Zavala@marsh.com> Dear Elaine, Please find attached an offer letter outlining your employment and the I-9 employment verification document. Please sign the offer letter and return to me with your salary verification by either fax or email. Please do not sign the I-9 form, b

To
williamselaine85@yahoo.com
CC
Jandt, Deborah
01/03/13 at 10:36 AM

Dear Elaine,

Please find attached an offer letter outlining your employment and the I-9 employment verification document. Please sign the offer letter and return to me with your salary verification by either fax or email. Please do not sign the I-9 form, but bring it with you and the required supporting documentation on your first day.

In the coming weeks you will be receiving an email from **'MMCo - HR'** with login instructions to our **New Hire Portal**. This portal will be used to share and collect important new hire documents, so please sign in and complete all necessary new hire paperwork and follow all necessary instructions.

More detailed information about our benefits can be found at http://mmcbenefits-handbook.mmcpeoplelink.com/Prod/CURR/index.html. Please note that there is a 30-day waiting period for benefits for all hires.

Deb will follow up with you when your background and reference checks have been completed and we will confirm your start date. In the meantime, if you have any questions, please don't hesitate to contact me.

Regards,

**Claudia Zavala**, Recruiting Coordinator
**Marsh, Inc.** | Human Resources | Talent Acquisition
540 W. Madison Street, Chicago, IL 60661
+1 312 627 6372 | Fax +1 212 948 5489
claudia.zavala@mmc.com

*****************************************************************

This e-mail transmission and any attachments that accompany it may
contain information that is privileged, confidential or otherwise
exempt from disclosure under applicable law and is intended solely for
the use of the individual(s) to whom it was intended to be addressed.
If you have received this e-mail by mistake, or you are not the
intended recipient, any disclosure, dissemination, distribution,
copying or other use or retention of this communication or its
substance is prohibited.  If you have received this communication in
error, please immediately reply to the author via e-mail that you
received this message by mistake and also permanently delete the

original and all copies of this e-mail and any attachments from your
computer. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

- 
- 
- 2 Attachments
- View all
- Download all

- No
Preview

Download

Williams, Anthony Offer Letter .pdf

-

 **MARSH**

**Deborah Jandt**
Vice President

Marsh
540 West Madison
Chicago, IL 60661-3630

(312) 627-6374 phone
deborah.jandt@marsh.com

November 6, 2012

Anthony Williams
11818 S. Parnell
Chicago, IL 60628

**Subject:  Offer of Employment**

Dear Anthony,

I am pleased to confirm our offer of employment as Client Representative in the Aviation National Management department of Marsh (the "Company"), reporting to Karole Bair. Your position is in salary grade C. This position is located at 540 West Madison, Chicago, IL.

We are confident that the Company can offer you a rewarding and challenging career opportunity, and we look forward to working with you.

**Compensation and Benefits**

Your compensation and benefits are as set forth below.

a. <u>Annual base salary</u>:  You will receive an annual base salary of $48,000, payable in installments, in accordance with the Company's payroll procedures in effect from time to time.  Your base salary includes compensation for all time worked, as well as appropriate consideration for sick days, personal days, and other time off.  Your base salary will be considered for adjustment in succeeding years as part of our normal year-end performance management and compensation process.

b. <u>Overtime Pay</u>:  In accordance with the federal Fair Labor Standards Act, this position is classified as non-exempt and is eligible for overtime pay.

c. <u>Vacation</u>:  You will be entitled to two (2) weeks of vacation annually, prorated in your first year, in accordance with Company policy.

d. <u>Benefit Programs</u>:  You and your eligible family members will have the opportunity to participate in the employee benefit plans, policies and programs provided by Marsh & McLennan Companies, on such terms and conditions as are generally provided to similarly situated employees of the Company.  These plans may include retirement, savings, medical, life, disability, and other insurance programs as well as an array of work/life effectiveness policies and programs.  Please be aware that nothing in this offer letter shall limit Marsh & McLennan Companies' ability to change, modify, cancel or amend any such policies or plans. Please visit our benefits website (www.mmcpeoplelink.com) for a review of our benefit programs.